UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES BURCHAM AND GRADY HILL, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED,

  Plaintiffs,

vs.

TAUBRA CORP., AN OHIO CORPORATION, D/B/A MERCURY SERVICE and JUDITH BOWERS FRANCIS, Individually,

  Defendants.
_____/

CASE NO.: 3:17-CV-00168-TMR

JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

  Plaintiffs James Burcham and Grady Hill, individually and on behalf of those similarly situated, and Defendants, Taubra Corp., and Judith Bowers, request approval of their Settlement Agreement ("Settlement Agreement," Exhibit A), which resolves the claims of Plaintiffs and the Opt-In Plaintiffs who have joined this action.

I.  <u>Procedural Background</u>

  Plaintiffs originally filed this lawsuit on February 7, 2017 seeking recovery of minimum wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), Ohio Const. Art. II Sec. 34(a), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.01, et. seq., and the Ohio Prompt Pay Act ("OPPA"),

O.R.C. § 4113.15. *See* D.E. 1. Plaintiffs later filed an Amended Complaint on March 30, 2017. *See* D.E. 12. The primary dispute between the Parties was whether Defendants misclassified Plaintiffs and the Opt-in Plaintiffs as independent contractors under applicable wage and hour laws. If Plaintiffs and the Opt-in Plaintiffs were in fact employees, they would be entitled to overtime compensation for overtime hours worked and minimum wages for all hours worked.

On January 17, 2018, this Court conditionally certified this action under the FLSA pursuant to a joint request from the Parties. *See* D.E. 38. Subsequently, notice was sent by mail and e-mail to putative class members and numerous class members joined this action. *See* D.E. 7, 37, 40, 41, 42, 43, 44, 47, and 48. In total, twenty-three (23) total class members, including Plaintiffs, joined this action. *Id.*

Both during and after the notice process, the Parties conducted discovery. The Parties exchanged full and complete written discovery, including the production of thousands of pages of documents to assess liability and damages. Defendants also produced information as to each class member who joined in order to be able to quantify damages. Over several months the Parties negotiated a class-wide settlement that resolved the claims of all Plaintiffs and Opt-in Plaintiffs, as well as attorneys' fees and costs to be paid to Plaintiffs' Counsel.[1]

---

[1] Defendants expressly deny any wrongdoing or liability against Defendants arising out of, or related to, any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the lawsuit, and further contend that, for any purpose other than settlement, this action is not appropriate for collective action treatment. Defendants further contend, among other things, that the classification of Plaintiffs and the Opt-in Plaintiffs as independent contractors was consistent with federal and state law.

2

## II. Summary of Settlement and Damages

The proposed settlement resolves all claims against Defendants for $100,000.00 (the "Settlement"). Pursuant to the Settlement Agreement (Ex. A), Plaintiffs and the Opt-in Plaintiffs are to receive $62,500.00 collectively (as apportioned on Exhibit A to the Settlement Agreement), and Plaintiffs' Counsel is to receive $37,500.00 for attorneys' fees and costs incurred.

Plaintiffs' primary allegations are that because they and other drivers were misclassified as independent contractors, they were not paid overtime compensation for overtime hours worked. During their employment with Defendants, Plaintiffs and the Opt-in Plaintiffs were paid by the route. As a result, under the FLSA, if Plaintiffs and the Opt-in Plaintiffs were entitled to overtime compensation, they would be owed "half-time" compensation pursuant to the job rate regulations (29 C.F.R. § 778.112). Here, the discovery and information provided to date shows that the average class member earned approximately $14/hr, meaning the additional overtime premium owed would be $7/hr if Plaintiffs and the Opt-in Plaintiffs prevailed on their claim.

In discovery, Defendants produced records and information for each Plaintiff and Opt-in Plaintiff. Plaintiff's Counsel also discussed the hours allegedly worked with each Plaintiff and Opt-in Plaintiff and calculated the number of overtime hours allegedly worked within the statute of limitations. The total number of overtime hours alleged to have been worked equals 12,851 in 1,069 weeks collectively worked by the Plaintiffs and Opt-in Plaintiffs based on records/information produced by

Defendants. This equates to an average of 12 overtime hours per week based on Plaintiff's estimation. That total hour figure is using <u>Plaintiffs'</u> estimation of their hours worked. Using Defendants' estimation of overtime hours worked, this figure would be 6,297 collectively for Plaintiffs and Opt-in Plaintiffs.

Using the $7 half-rate for overtime calculation purposes, the Plaintiffs' and Opt-in Plaintiffs total alleged damages would be $89,957 (12,851 overtime hours x $7/hr half-rate) in overtime wages owed. Here, under the terms of the settlement, Plaintiffs and Opt-in Plaintiffs are to receive a total of $62,500,[2] or approximately 70% of the claimed damages. Using Defendants' estimation of hours, the maximum owed to Plaintiffs and Opt-In Plaintiffs would be $44,079 (6,279 overtime hours x $7/hr half-rate) in overtime wages. Thus, under Defendants' estimation of hours, the class would be recovering 142% of the claimed damages.

As discussed above, after numerous months of discovery the Parties were able to negotiate and ultimately resolve this matter. The Parties request this Court find that their settlement is a fair and reasonable resolution of Plaintiffs and Opt-in Plaintiffs' FLSA claims. Accordingly, under 29 U.S.C. § 216(b), the Parties request that the Court approve their Settlement Agreement.

---

[2] In consideration for the settlement payments, Plaintiffs and the Opt-in Plaintiffs have agreed to resolve for these amounts in exchange for a release of their wage and hour claims against Defendants. Since the FLSA and Ohio law confer virtually the same rights upon Plaintiffs, and no Rule 23 class was sought here under Ohio law, the settlement should be assessed under the FLSA standard. In addition, one of the collective action class members, John Rucker, and his wife Mae Rucker, have additionally asserted independent claims that are unrelated to the collective action against the Defendants here, which is being separately resolved through a settlement agreement and release.

4

### III. Collective Action Settlement and Approval Procedure

When a current or former employee alleges a violation of the FLSA, either the Secretary of Labor must oversee the payment of unpaid wages, or if the employee brings a private action and the parties settle the matter, a district court may enter a stipulated judgment after evaluating the parties' settlement terms for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982); *see also Vigna v. Emery Federal Credit Union*, 2016 WL 7034237, at *2 (S.D. Ohio 2016); *Gentrup v. Renovo Serv., LLC*, 2011 WL 2532922, at *2 (S.D. Ohio 2011). The existence of *bona fide* disputes helps guarantee that a compromise is reasonable under the FLSA. *Id.* There is a strong federal policy of encouraging settlement of class actions. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371-72 (S.D. Ohio 2006); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

### IV. This Court Should Find the Settlement is Fair and Reasonable.

Here, the Parties had bona fide disputes regarding whether Plaintiffs and the Opt-in Plaintiffs were properly classified as independent contractors or not; the number of overtime hours allegedly worked; whether a two or three year statute of limitations applied; and whether any liquidated damages were appropriate.

The Parties here engaged in initial motion practice, agreed to conditional certification of this matter under the FLSA for notice purposes only, and conducted several months of discovery including full written discovery and production of

thousands of pages of information. Both Parties were well versed in the details of this matter and in a strong position to weigh the strengths and weaknesses of their positions. The Parties negotiated for several months and were only able to resolve near the end of the discovery period. This shows the settlement was as a result of an arms-length transaction.

As discussed above, the settlement confers a substantial benefit upon the Plaintiffs and Opt-in Plaintiffs, resulting in between 70% and 142% of the claimed wages depending upon whose estimation of hours is used. Plaintiffs faced substantial hurdles to prevail on the merits, including defending and prosecuting summary judgment motions, a motion for decertification from Defendants, and then prevailing in a fact-intensive trial and convincing a jury to award the Plaintiffs' estimation of their hours worked. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. If Defendants prevailed in their independent contractor defense, Plaintiffs would lose entirely and be entitled to zero. If Plaintiffs could not prove that Defendants' alleged violation of the wage and hour laws was willful, Plaintiffs and the Opt-in Plaintiffs' recovery would be reduced from the settlement and estimation of damages described above. Here, the estimation of damages and the settlement is premised on a three year statute of limitations which further supports a finding that the settlement is reasonable. Lastly, any result achieved by Plaintiffs likely would have been appealed by Defendants. These risks support finding that the proposed settlement here is reasonable. The court should

find that the parties are settling a dispute between the class of independent contractors and their contractor, and that nothing in the Parties' lawsuit or settlement gives the class the status of employee. Accordingly, the Court should approve of the form and sum of the payment set forth in the settlement agreement.

For these reasons, this Court should approve the proposed settlement as fair, reasonable and adequate under the FLSA.

### V. Plaintiffs' Counsel Attorneys' Fees and Costs are Reasonable.

Here, the settlement contemplates payment of attorneys' fees and costs to Plaintiffs' Counsel of $37,500.[3] The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)). "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] encourage[s] the vindication of congressionally identified policies and rights. *Fegley*, 19 F.3d at 1135 (quoting *United Slate*, 732 F.2d at 503). This matter has been pending since February 2017 (approximately 17 months), and Plaintiffs' Counsel undertook motion practice at the beginning of the case; administered notice to approximately one hundred sixty-four (164) class members; conducted full written

---

[3] Class Counsel's costs are currently $1,488.16. Thus, the actual fees to be recovered are approximately $36,011.84. Counsel anticipates additional costs will also be incurred from the mailing of settlement checks to each class member as well as additional phone calls to answer any questions class members may have.

discovery on Defendants and Plaintiffs, including the production and review of thousands of pages of responsive documents; exchanged class-wide information on each of the Opt-in Plaintiffs; communicated with all twenty-three collective Plaintiffs and Opt-in Plaintiffs on numerous occasions to ascertain hour and damage estimates; negotiated and conducted numerous lengthy phone calls with counsel for Defendants over the last several months to resolve the matter; and drafted both the collective action settlement agreement and motion to approve here.  Additionally, once settlement checks are provided to all Plaintiffs and Opt-in Plaintiffs, Plaintiffs' Counsel will be available to speak with any Plaintiff and Opt-in Plaintiff who may have any questions regarding the settlement funds.  As such, based on the work performed over the almost year and a half this matter has been pending, and in light of the substantial benefit conveyed upon Plaintiffs and Opt-in Plaintiffs, this Court should find that the settlement agreement is fair and reasonable as it relates to payment of Plaintiffs' attorneys' fees and costs.

## CONCLUSION

For the reasons set forth above, the parties respectfully request the Court (1) fully approve the Settlement Agreement; (2) finally certify for settlement purposes the settlement class under the FLSA; (3) order the Parties to follow the terms and conditions of the Settlement Agreement; and (4) dismiss the litigation with prejudice.

Respectfully submitted this 9th day of August, 2018.

| /s/ C. RYAN MORGAN | /s/ MICHAEL W. SANDNER |

8

| | |
|---|---|
| C. Ryan Morgan, Esq.<br>Florida Bar. No. 0015527<br>*Pro Hac Vice*<br>Morgan & Morgan, P.A.<br>20 N. Orange Ave., 14th Floor<br>P.O. Box 4979<br>Orlando, FL 32802-4979<br>Telephone: (407) 420-1414<br>Facsimile: (407) 245-3401<br>Email: RMorgan@forthepeople.com<br><br>-and-<br><br>/s/ ANDREW BILLER<br>Andrew Biller, Esq.<br>Ohio Bar. No. 0081452<br>Markovitz, Stock & DeMarco LLC<br>Easton Town Center<br>4200 Regent Street, Suite 200<br>Columbus, OH 43219<br>Telephone: (614) 604-8759<br>Facsimile: (614) 583-8107<br>Email: ABiller@msdlegal.com<br><br>**Attorneys for Plaintiff(s)** | Michael W. Sandner, Esq.<br>Ohio Bar No. 0064107<br>Matthew D. Stokely, Esq.<br>Ohio Bar No. 0062611<br>Pickrel, Schaeffer & Ebeling, Co., LPA<br>2700 Kettering Tower<br>Dayton, Ohio 45423<br>Telephone: (937) 223-1130<br>Facsimile: (937) 223-0339<br>Email: msandner@pselaw.com<br>Email: mstokely@pselaw.com<br>**Attorneys for Defendant** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ C. RYAN MORGAN
C. Ryan Morgan, Esq